IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THEODORE HASTREITER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) **COMPLAINT FOR DAMAGES**<br>NATIONAL RAILROAD PASSENGER ) **JURY TRIAL DEMANDED**<br>CORPORATION d/b/a AMTRAK, and )<br>BNSF RAILWAY COMPANY, )<br>)<br>Defendants. ) | |

## I. IDENTIFICATION OF PARTIES

1. Plaintiff, THEODORE HASTREITER, is an adult U.S. citizen, and resident of the State of Montana and at all times herein was a fare-paying passenger onboard the *Empire Builder* 7/27 train, originating in Chicago, Illinois, owned and operated in the furtherance of interstate commerce by Defendant NATIONAL RAILROAD PASSENGER CORPORATION a/k/a AMTRAK (AMTRAK).

2. Defendant, NATIONAL RAILROAD PASSENGER CORPORATION a/k/a AMTRAK (AMTRAK), is a corporation organized and existing under the laws of the United States of America with a principal place of business in Washington, D.C. Defendant AMTRAK has an office for the transaction of business, and transacts business in Chicago, Illinois and in this District.

3. Defendant BNSF RAILWAY COMPANY (BNSF) is a Delaware corporation with its principal place of business in Fort Worth, Texas. BNSF is engaged in interstate commerce as a common carrier by railroad and owns and operates railyards, tracks, and rights of way in Chicago, Illinois and in this District.

4. There may be unknown entities or "John Does" who may be at fault and when their identification becomes known, these pleadings may be amended accordingly. This may include but is not limited to those entities involved in the design or construction of the route or of mechanical equipment used on the rail line at issue.

## II. JURISDICTION AND VENUE

5. The court has federal question jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1331, because AMTRAK is a congressionally incorporated corporation, over half of whose capital stock is owned by the federal government. Additionally, BNSF is a legal entity existing under the laws of the State of Delaware, that operates in 28 states, including in and throughout Illinois and in this District, and possesses a network of 32,500 route miles of train track throughout North America.

6. This Court has specific and personal jurisdiction of Plaintiff's action pursuant to 28 U.S.C. § 1332(a) as the amount in controversy exceeds the jurisdictional threshold, exclusive of costs, is between citizens of different states, and because the events or omissions that give rise to the claim are related to the minimum contacts and business activities in this district conducted by both AMTRAK and BNSF. These minimum contacts and business activities include but are not limited to the fact that AMTRAK's *Empire Builder* 7/27 train is a storied service line that originates in Chicago, Illinois and departs from Chicago's Union Station[1] where the crew's timetables are gathered, finalized, and distributed. Additionally, BNSF agents located in AMTRAK's Chicago Control Center are responsible for supplying accurate information regarding the condition of the host railroad to AMTRAK and provided insufficient, incomplete, and/or incorrect information to the

---

[1] AMTRAK is owner and operator of Chicago's Union Station, the departure point for fare-paying passengers on the *Empire Builder*.

AMTRAK *Empire Builder* 7/27 train crew in their operating timetable regarding necessary speed restrictions and accurate track conditions on the track where the derailment occurred.

7. Further, this Court has jurisdiction over BNSF as the owner, operator, maintainer, possessor, lessor, controller and entity otherwise responsible for a substantial portion of track upon which the *Empire Builder* 7/27 train traveled until it derailed near Joplin, Montana. Moreover, BNSF maintains agents, employees, offices railyards, a police force and railroad equipment in and throughout Illinois including substantially in this District. Personal jurisdiction over AMTRAK and BNSF further exists pursuant to Illinois' long arm statute, 735 ILCS 5/2-209.

8. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 and 45 U.S.C. § 56 because a substantial part of the events or omissions giving rise to the claim occurred in this District and AMTRAK and BNSF engaged in substantial business activities in the State of Illinois.

### III. NATURE OF OCCURRENCE

9. On and before September 25, 2021, Defendant AMTRAK was a corporation doing business as a common carrier engaged in the transportation of passengers between various destinations in the states of Illinois and Montana.

10. Amtrak's state-of-the-art Chicago Control Center at Chicago Union Station manages and dispatches Amtrak and other rail traffic in four geographically separate areas and its operations involve interconnections with territories owned by BNSF.

11. In 2019, Amtrak operated eight National Network trains and eight state supported corridor services in Illinois.

12. At the end of 2019 there were 394,969 members of the Amtrak Guest Rewards program in Illinois.

13. Amtrak spent $150,827,484 on goods and services in Illinois in FY19, with approximately $42,000,000 of that being spent in Cook County, Illinois.

14. At the end of 2019, Amtrak employed 1,284 Illinois residents and paid total wages of $101,885,672 to Amtrak employees living in the State.

15. Amtrak operates a switching and maintenance facility in Chicago at 1400 S. Lumber Street that is responsible for upkeep of coaches, sleeping, and food service cars, baggage cars and locomotives used on all trains serving Chicago. This includes over half of AMTRAK'S National Network trains. Trains are serviced, cleaned, stocked, fueled, and maintained at this location.

16. Defendant BNSF owns and is responsible for a substantial portion of railroad track upon which the *Empire Builder* 7/27 train traveled on throughout its trip, which originated in a Chicago, Illinois railyard coextensive with AMTRAK'S railyard at 1400 S. Lumber Street.

17. Moreover, BNSF's Cicero railyard, also in this District, serves as a major transportation hub that links the Midwest with the Pacific Northwest and plays a vital role in the interstate transportation of a wide variety of goods and commodities.

18. BNSF'S Cicero railyard also frequently serves as the destination point for foreign imports shipped across the Pacific Ocean, which are shipped to the Pacific Northwest, then travel by rail through the Cicero railyard to points in the Midwest, Eastern Seaboard, and beyond.

19. AMTRAK trains also pass through BNSF Cicero railyard on a daily basis.

20. Upon information and belief, on and before September 25, 2021, BNSF was a host railroad pursuant to 49 USC § 24101 *et seq*.

21. AMTRAK pays host railroads for use of their tracks.

22. Upon information and belief, BNSF is a host railroad for five of Amtrak's services in Illinois, including the *Empire Builder* service.

23. Upon information and belief, on and before September 25, 2021, BNSF permitted AMTRAK to have access to the host rail line upon which the *Empire Builder* 7/27 train was traveling pursuant to an operating agreement.

24. Upon information and belief, BNSF representatives were stationed at the Chicago Control Center in Chicago, Illinois on the day the AMTRAK *Empire Builder* 7/27 train departed Chicago.

25. Upon information and belief, on and before September 25, 2021, BNSF representatives stationed at the Chicago Control Center in Chicago, Illinois were responsible for communicating timetables, temporary speed restrictions, permanent speed restrictions and any maintenance on the rail to AMTRAK Crews operating out of Chicago.

26. Upon information and belief, on and before September 25, 2021, BNSF was responsible for sending "timetables" to AMTRAK's Crew in Chicago regarding permanent and temporary speed restrictions.

27. Upon information and belief, BNSF did not communicate that any maintenance was being performed on the track at and around the East Buelow switch point before AMTRAK *Empire Builder* 7/27 train left Chicago.

28. Upon information and belief, BNSF did not communicate information regarding the true condition of the track at and around the East Buelow switch point.

29. On September 25, 2021, Defendant AMTRAK through its employees and/or agents, operated, managed, maintained, supervised, owned, designed, constructed, and/or controlled the AMTRAK *Empire Builder* 7/27 train, which originated in Chicago, Illinois and was enroute to Seattle, Washington.

30. Upon information and belief, the AMTRAK *Empire Builder* 7/27 train was operated by employees and/or agents of Defendant AMTRAK.

31. Defendant AMTRAK marketed and sold plaintiff a ticket for the *Empire Builder* 7/27. On September 24, 2021, Plaintiff THEODORE HASTREITER arrived at La Crosse Station in Wisconsin for his ride on Defendant AMTRAK's *Empire Builder* 7/27 train, which departed on that same day.

32. On and before September 25, 2021, Defendant BNSF through its employees and/or agents, operated, managed, maintained, supervised, owned, designed, constructed, and/or controlled the railroad tracks that the AMTRAK *Empire Builder* 7/27 train traveled upon during the aforementioned trip.

33. At approximately 3:55 p.m. on September 25, 2021, the AMTRAK *Empire Builder* 7/27 train traveled on a segment of railroad track near Joplin, Montana which was operated, managed, maintained, supervised, owned, designed, constructed and/or controlled, or contracted to operate, manage, maintain, supervise, own and/or control by Defendant BNSF.

34. On and before September 25, 2021 at approximately 3:55 p.m. an unsafe condition existed on the railroad track on which the AMTRAK *Empire Builder* 7/27 train traveled at or near the East Buelow switch point.

35. In the alternative, on and before September 25, 2021 at approximately 3:55 p.m. an unsafe condition existed on the AMTRAK *Empire Builder* 7/27 train as it traveled at or near the East Buelow switch point.

36. On September 25, 2021, at approximately 3:55 p.m., AMTRAK *Empire Builder* 7/27 train approached the East Buelow switch point traveling approximately 78 mph.

37. On September 25, 2021 at approximately 3:55 p.m. the AMTRAK *Empire Builder* 7/27 train derailed at or near the East Buelow switch point causing serious injuries to the Plaintiff and other passengers on board the train. Eight of the cars derailed with four of them being turned on their sides.

38. As a result, Plaintiff THEODORE HASTREITER was traumatized and sustained injuries for which he was hospitalized for care and treatment.

## IV. CLAIMS FOR RELIEF

39. Plaintiff's injuries, damages, and losses were proximately caused by Defendant AMTRAK and BNSF's wrongful conduct under common law, federal and state statutes and regulations, rendering Defendants liable and at fault for all injuries and damages.

## COUNT I
## NEGLIGENCE
## (AMTRAK)

40. Paragraphs 1 through 39 of this Complaint are incorporated herein by reference as though fully set forth herein.

41. Upon information and belief, Defendant AMTRAK owns, maintains, and operates the railcars and engines that comprised the AMTRAK *Empire Builder* 7/27 train.

42. On and before September 25, 2021, Defendant AMTRAK had a duty to safely operate, inspect, maintain, and repair the railcars and engines that comprised the AMTRAK *Empire Builder* 7/27 train.

43. On and before September 25, 2021, Defendant AMTRAK had a duty to inspect, maintain, and repair the rail upon which the AMTRAK *Empire Builder* 7/27 train operated.

44. Defendant AMTRAK, through its agents and/or employees, was a common carrier and owed its passenger, THEODORE HASTREITER, the highest duties of care, as well as duties of ordinary and reasonable care.

45. Defendant AMTRAK, through its agents and/or employees, was at fault and violated the highest duty of care, including but not limited to one or more of the following ways:

a. Failed to install and render operable proper train-control safety;

b. Failed to institute and comply with a slow-order/temporary speed restriction for the area of track at or near the East Buelow switch point;

c. Failed to comply with Defendant's own operational and safety plan, rules, standards, and procedures;

d. Failed to comply with the applicable federal standards of care, including, but not limited to, the failure to comply with applicable federal statutes or regulations;

e. Failed to properly train its agents and/or employees in the safe operation, inspection, maintenance, and repair of the railcars and engines;

f. Failed to properly supervise its agents and/or employees in the proper safe operation, inspection, maintenance, and repair of the railcars and engines;

g. Failed to properly maintain the rail cars and engines in a safe condition for the operation of passenger trains;

h. Failed to properly operate, inspect, maintain, and repair the railcars and engines in accordance with applicable regulatory and/or industry standards;

i. Failed to properly operate, inspect, maintain, and repair the railcars and engines to ascertain whether they were in a safe condition for use as a passenger train before commencing operation;

j. Failed to properly train its agents and/or employees in the safe maintenance of the train track;

k. Failed to properly supervise its agents and/or employees in the proper maintenance of the train track;

    l. Failed to properly maintain the railroad tracks in a safe condition for the passage of passenger trains;

    m. Failed to properly maintain the railroad tracks in accordance with applicable regulatory and/or industry standards;

    n. Failed to properly inspect the track to ascertain whether it was in a safe condition for the passage of passenger trains before returning the track to service;

    o. Failed to provide the proper track surface conditions, including but not limited to, proper runoff, as required by applicable regulatory and/or industry standards;

    p. Failed to properly maintain the track geometry in a safe condition for the passage of passenger trains;

    q. Failed to inspect, detect and/or mitigate internal rail flaws, that caused and/or contributed to a broken rail.

    r. Was otherwise careless and negligent.

46. Defendant AMTRAK is also liable for punitive and/or exemplary damages under choice of law principles for the reckless and/or willful disregard of the rights and safety of the passengers and the public.

## COUNT II
## NEGLIGENCE
## (BNSF)

47. Paragraphs 1 through 39 of this Complaint are incorporated herein by reference as though fully set forth herein.

48. Upon information and belief, Defendant BNSF owns, maintains, and operates a substantial portion of the train tracks traveled upon by the AMTRAK *Empire Builder* 7/27 train including where the derailment occurred.

49. On and before September 25, 2021, Defendant BNSF had a duty to inspect, maintain, and repair the train tracks, including, but not limited to, the rails, ties, fasteners, anchors, ballast,

subgrade, switch(s), frog(s) and other track appurtenances to ensure they were in good and safe condition at all times for use by passenger rail cars like the AMTRAK *Empire Builder* 7/27 train.

50. Defendant BNSF, through its agents and/or employees, was a common carrier and owed Plaintiff, THEODORE HASTREITER, the highest duties of care, as well as duties of ordinary and reasonable care.

51. Defendant BNSF, through its agents and/or employees, was at fault and violated the highest duty of care, including but not limited to one or more of the following ways:

   s. Failed to install and render operable proper train-control safety;

   t. Failed to issue a slow-order/temporary speed restriction for the area of track at or near the East Buelow switch point;

   u. Failed to comply with Defendant's own operational and safety plan, rules, standards, and procedures;

   v. Failed to comply with the applicable federal standards of care, including, but not limited to, the failure to comply with applicable federal statutes or regulations;

   w. Failed to properly train its agents and/or employees in the safe maintenance of the train track;

   x. Failed to properly supervise its agents and/or employees in the proper maintenance of the train track;

   y. Failed to properly maintain the railroad tracks in a safe condition for the passage of passenger trains;

   z. Failed to properly maintain the railroad tracks in accordance with applicable regulatory and/or industry standards;

   aa. Failed to properly inspect the track to ascertain whether it was in a safe condition for the passage of passenger trains before returning the track to service;

   bb. Failed to provide the proper track surface conditions, including but not limited to, proper runoff, as required by applicable regulatory and/or industry standards;

cc. Failed to properly maintain the track geometry in a safe condition for the passage of passenger trains;

dd. Failed to inspect, detect and/or mitigate internal rail flaws, that caused and/or contributed to a broken rail;

ee. Was otherwise careless and negligent.

52. Defendant BNSF is also liable for punitive and/or exemplary damages under choice of law principles for the reckless and/or willful disregard of the rights and safety of the passengers and the public.

## V. INJURIES, HARM AND DAMAGES

53. As a direct and proximate result of one or more of the above acts and/or omissions of the Defendants AMTRAK and BNSF, Plaintiff has suffered serious physical and emotional injuries, requiring past and future medical care, disability, loss of enjoyment of life, pain, anxiety, distress and emotional trauma, physical impairment and disfigurement, pecuniary and economic losses, and other injuries, harm, and noneconomic damages which are ongoing and the total amount of which will be proven at trial, as well as economic and property damages, including, but not limited to, lost wages and earnings, and lost earnings capacity.

## VI. PRAYER FOR RELIEF

54. Plaintiff claims all economic and non-economic damages, along with all compensatory, pecuniary, exemplary damages, punitive damages and emotional distress damages.

55. Plaintiff reserves the right to seek other damages as appropriate.

WHEREFORE, Plaintiff prays for judgment against Defendants, NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK, and BURLINGTON NORTHERN SANTA FE

11

RAILWAY CO., in such amount as will be proven at the time of trial, together with such other and further relief as the jury or court deems appropriate.

## VII. JURY DEMAND

PLAINTIFF demands a trial by jury as to all claims in this action.

DATED this 4th day of October, 2021.

/s_Kristofer S. Riddle
Sean P. Driscoll (ARDC No. 6288120)
Kristofer S. Riddle (ARDC No. 6306828)
CLIFFORD LAW OFFICES, P.C.
120 N. LaSalle Street, 36th Floor
Chicago, Illinois 60602
Telephone: (312) 899-9090
Telephone: (312) 251-1160
spd@cliffordlaw.com
ksr@cliffordlaw.com

Attorneys for Plaintiff THEODORE HASTREITER